622 F.2d 1315
 In re PARIS AIR CRASH of March 3, 1974 McDonnell Douglas Corporation,
Defendant-Appellant. In re PARIS AIR CRASH of March 3, 1974
General Dynamics Corporation, Defendant- Appellant,
v.
PLAINTIFFS IN MDL 172, Plaintiffs-Appellees.
 Nos. 77-2099, 77-2266.
 United States Court of Appeals,
Ninth Circuit.
 June 2, 1980.
Rehearing Denied July 29, 1980.
 
 William A. Norris, Tuttle & Taylor Inc., Los Angeles, Cal., for McDonnell Douglas Corp.
 Charles A. Wright, Austin, Tex., Gregory A. Long, Overton, Lyman & Prince, Los Angeles, Cal., for General Dynamics.
 Leonard Sacks, California Trial Lawyers Assoc., Encino, Cal., Marjorie S. Steinberg, Los Angeles, Cal., Robert G. Beloud, Upland, Cal., Arne Werchick, San Francisco, Cal., William P. Camusi, Los Angeles, Cal., Glen T. Bashore, Santa Ana, Cal., Lee S. Kreindler, Kreindler & Kreindler, New York City, William Marshall Morgan, Morgan, Wenzel & McNicholas, Los Angeles, Cal., John J. O'Neil, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on brief; Steven I. Zetterberg, Claremont, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN and KENNEDY, Circuit Judges, and EAST,* District Judge.
 KENNEDY, Circuit Judge:
 
 
 1
 The single question in this interlocutory appeal is whether the California rule that punitive damages are not permitted in wrongful death actions is consistent with the equal protection clause of the fourteenth amendment and its counterpart in the state constitution. The question arises in the wrongful death actions that resulted from the Paris air crash of March 3, 1974. A DC-10 passenger plane operated by Turkish Airlines, Inc., was en route from Paris to London when it crashed, and all 346 people aboard were killed.
 
 
 2
 Wrongful death actions commenced in various districts across the country were consolidated by the Judicial Panel on Multidistrict Litigation and transferred to the Central District of California. The trial court held that California law would apply in determination of the suits and no objection to that ruling is made on this appeal.[1]
 
 
 3
 Many of the individual suits included claims for punitive damages based on allegations of intentional, fraudulent, or malicious conduct in the design, production, and certification of the plane. The defendants made, and renewed, motions to dismiss these claims and for summary judgment on them, arguing that California law did not provide for punitive damages in wrongful death actions. The district court denied the motions. In re Paris Air Crash of March 3, 1974, 427 F.Supp. 701 (C.D.Cal.1977). The trial court acknowledged that California appellate courts have held punitive damages are not recoverable in wrongful death actions,[2] but held that this restriction denied wrongful death plaintiffs, as compared to other tort plaintiffs, equal protection of the laws under the Federal and California Constitutions, U.S.Const. Amend. XIV, § 1; Cal.Const. art. I, § 7; id. art. IV, § 16(a).[3] The trial court's decision was certified for immediate appeal pursuant to 28 U.S.C. § 1292(b) (1976). See 427 F.Supp. at 702 n.1, 710.
 
 
 4
 The trial court having based it ruling upon both the equal protection clause of the Federal Constitution and its counterpart under the Constitution of the State of California, we discuss the case in light of each of those provisions. As indicated below, the standard of review under the Federal Constitution may be less exacting than the one we must apply under California law. We find it appropriate to consider the federal claim first, noting that the analysis in each part of the opinion bears upon the other.
 
 
 5
 Appellees press our application of a principle that federal appellate courts will defer to a federal district court judge's interpretation of the law of the state in which he sits, absent clear error. See, e. g., Bishop v. Wood, 426 U.S. 341, 344-46, 96 S.Ct. 2074, 2077-2078, 48 L.Ed.2d 684 (1976); American Timber & Trading Co. v. First Nat'l Bank, 511 F.2d 980, 983 (9th Cir. 1974), cert. denied, 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975). We need not decide whether the decision below was clear error because it was rendered without the benefit of the California Supreme Court's subsequent decision in Justus v. Atchison, 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122 (1977). That decision clarified the analysis to be applied under the California Constitution to the State's wrongful death statute.
 
 Federal Constitutional Principles
 
 6
 The less difficult question before us arises under the Federal Constitution. If we find a rational relation between the statute and a legislative object, then the statute limiting tort liability is valid and no further or more exacting review is required. We think this rule follows from two recent decisions of the Supreme Court sustaining tort liability limitations. See Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 82-84, 93-94, 98 S.Ct. 2620, 2635-2636, 2641-2642, 57 L.Ed.2d 595 (1978); Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). The damage limitations imposed on tort plaintiffs by the statutory classifications in those cases were more severe than the one at issue here. The laws in both cited cases limited the types or amount of compensatory relief payable, whereas California's wrongful death statute allows the full measure of such damages.
 
 
 7
 In Mobil Oil a certain class of plaintiffs was deprived of one type of compensatory damages altogether. There the dissent observed that
 
 
 8
 (w)hen death arises from injuries occurring within a State's territorial waters, dependents will be able to recover for loss of society . . . . But once a vessel crosses the imaginary three-mile line, the seamen's dependents no longer have a remedy for an identical loss, occasioned by an identical breach of duty.
 
 
 9
 436 U.S. at 627, 98 S.Ct. at 2016 (Marshall, J., dissenting.). By contrast, no such issue is presented here. Wrongful death plaintiffs in California are compensated for loss of society, as well as all other losses they personally suffer.
 
 
 10
 In Duke Power the Court sustained a ceiling on aggregate liability for nuclear accidents. The amount was arguably arbitrary, but the Court held that the relation of the ceiling to the purpose of avoiding excessive liability for nuclear accidents was sufficiently close to sustain the statute. Avoidance of excessive liability is also the goal advanced in support of the limitation precluding punitive damages in wrongful death suits. See Justus v. Atchison, 19 Cal.3d 564, 582, 139 Cal.Rptr. 97, 109, 565 P.2d 122, 134 (1977), and discussion infra, pp. 1322-1323. We find this purpose is sufficient to sustain the validity of the statute under federal law, and that no more exacting review is required under the Federal Constitution.[4] A court should be quite certain of its ground before making a categorical finding that there is no permissible objective served by a state statute or that there is utterly no sensible of discernible relation between the legislature's classification and a legitimate end.[5] Such caution is proper because a finding of no state purpose reasonably advanced may indicate merely that a court finds the purpose less momentous than did the legislature.[6]
 
 
 11
 The court below decided the state statute violated the federal guarantee of equal protection only after subjecting the classification in question to the strictest kind of scrutiny. It placed the burden of justification on the state. This was based on a determination that the "right to be free from oppressive, fraudulent or malicious conduct . . . is personal and substantially within the protections accorded fundamental rights found expressly and impliedly in the Fifth and Fourteenth Amendments to the United States Constitution." 427 F.Supp. at 708 (footnote omitted). We reject this reasoning. Its logic would apply to all areas of civil law in every state, and all civil remedies would be subject to the strictest standard of review. There is no authority for that proposition generally, and it is quite inappropriate in this case. The plaintiffs, appellees here, are not without a remedy for personal losses sustained in fact. California's wrongful death statute allows full compensation for loss of companionship and financial support. Plaintiffs seek in addition, and as a matter of constitutional right, the opportunity to act as private attorneys general to effect the deterrence and retribution functions of section 3294 of the California Civil Code. So far is this opportunity from being a fundamental personal right that it is an interest not truly personal in nature at all. It is rather a public interest, and in defining who may give it effect the legislature should be given a broad discretion, similar to the discretion of a prosecutor. The clearly noncompensatory purpose and the serious and often unpredictable effects of allowing actions for punitive damages were elaborately discussed by the Supreme Court of the United States in IBEW v. Foust, 442 U.S. 42, 48-52, 99 S.Ct. 2121, 2125-2128, 60 L.Ed.2d 698 (1979). This distinction between compensatory and punitive damages explains why a court will in general be less likely to hold unconstitutional a limit on the latter. See, e. g., Robert v. Ford Motor Co., 424 N.Y.S.2d 747 (App.Div.1980). The case is therefore quite different from one in which the plaintiff has suffered a serious loss, be it a personal injury or the loss of companionship and financial support through the death of a relative and is left with no effective remedy and thus no compensation for a grievous deprivation. In such cases, the courts have adopted remedial innovations through common-law power, see, e. g., Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), or through application of equal protection principles, see, e. g., Brown v. Merlo, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); Dependents of Ondler v. Peace Officers Benefit Fund, 289 N.W.2d 486 (Minn.1980) (limitation excluding only one class of persons unconstitutional and bears no relation to statute's purpose of providing additional benefits to dependents of peace officers killed in line of duty due to unusual risks of work). In this case, as we have noted, fair compensation is provided and the cases just cited are not controlling.[7] Cf. Glona v. American Guar. & Liab. Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968) (wrongful death statute that bars recovery for parent when child legitimate but not illegitimate makes irrational distinction). The principles of strict scrutiny do not apply, the statute is rational, and it is valid under the Federal Constitution.
 
 California Constitutional Provisions
 
 12
 An understanding of the federal equal protection clause peripherally informs the following analysis of its analog in California's Constitution.[8] Although the latter is in many respects similar to the former, see D'Amico v. Board of Medical Examiners, 11 Cal.3d 1, 16-19, 112 Cal.Rptr. 786, 797-99, 520 P.2d 10, 21-23 (1974), the state courts find it "possessed of an independent vitality," Serrano v. Priest, 18 Cal.3d 728, 764, 135 Cal.Rptr. 345, 366, 557 P.2d 929, 950 (1976).[9]
 
 
 13
 Notwithstanding the authority of the state courts to rest judicial invalidation of a statute such as the one before us upon the provisions of the state constitution alone, the California Supreme Court in two significant cases has invalidated limits on tort recovery in ostensible reliance upon both the federal equal protection clause and its state counterpart. See Cooper v. Bray, 21 Cal.3d 841, 148 Cal.Rptr. 148, 582 P.2d 604 (1978); Brown v. Merlo, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973). These cases deserve examination in the context of the issue before us here. We think they are distinguishable because they presented tort limitations that restricted damages in respects that differentiate them quite broadly from the statute before us.
 
 
 14
 Both cases involved the guest statute. This limitation was more burdensome and anomalous than other limitations on recovery for four reasons. First, it denied a large class of persons any compensation at all for grievous physical injury. Second, it was based not on a contemporary justification, such as limiting recovery to reasonable amounts of damages personally suffered, but rather on vestigial analogies to the law of bailments. See Comment, The Common Law Basis of Automobile Guest Statutes, 43 U.Chi.L.Rev. 798 (1976). Similarly, the guest statute was anomalous in that it explicitly created a dual standard of care to two passengers in the same vehicle. Third, guest statutes were generally thought to be irrational and vestigial, see W. Prosser, Handbook of the Law of Torts 383 (4th ed. 1971), whereas the National Conference of Commissioners on Uniform State Laws has recommended as an option a limitation identical to the one challenged here. Model Survival and Death Act § 3(e) & Commissioners' Comment (1979). A provision about which "there is room for difference in opinion" is by very definition not a provision that is conclusively irrational as a matter of constitutional law. Fourth, the cause of action judicially altered in Brown and in Cooper is a common-law cause of action in origin, although it was the subject of a statute, and the cause of action in the case before us is viewed by many as wholly statutory. Courts traditionally have played a more active role in developing the former type of action. Cf. Justus v. Atchison, 19 Cal.3d 564, 580-81, 139 Cal.Rptr. 97, 108, 565 P.2d 122, 133 (1977) (legislature has wide discretion in creating new remedy such as wrongful death). The distinctions are such that we do not find that the reasoning of cited significant California cases controls the question before us.
 
 
 15
 The principal argument of the district court, in its reliance on both the federal and state constitutions, was that the punitive damage limitation is irrational because it permits damages for injury to property while prohibiting punitive damages for death of a person in the same accident.[10] 427 F.Supp. at 706. The use of the phrase "punitive damages" as a unitary and undifferentiated concept to describe injuries to both property and person obscures an important point. In California as elsewhere the amount of punitive damages must be proportional to the amount of compensatory damages. See, e. g., Allard v. Church of Scientology, 58 Cal.App.3d 439, 452-53, 129 Cal.Rptr. 797, 805-06 (1976). Assimilating a punitive damage award for the destruction of property to the enormously greater punitive damages likely to be awarded for the death of a person and suggesting that the presence of one ought automatically to import the other, is more effective rhetorically than it is logically.
 
 
 16
 There is a further consideration. The fact that it is the conduct of the actor, and not the injury suffered, which is the principal focus of the statute, detracts substantially from the argument that parity or proportion of recovery for every kind of injury must be maintained. Once a civil duty has been breached in a malicious and outrageous way, it is in a sense irrelevant to the punitive and retributive purposes of the damage statute to require any injury at all as a condition to recovery. A scheme motivated purely to achieve deterrence and retribution at all costs would be one of absolute liability with no requirement of causation or injury. This is indeed true of many criminal statutes, but even this is tempered by prosecutorial discretion. The logic of plaintiffs' insistence that no limitation is valid unless it is related to deterrence and punitive goals just as forcefully would require us to rule that an injury requirement is wholly irrational and has nothing to do with the propriety of punitive damages.[11]
 
 
 17
 Punitive damages are a hybrid of the civil and the criminal law.[12] The element of arbitrariness in part stems from the inevitable amalgam. On the one hand, it is reasonable for the state when it authorizes private plaintiffs as deputies to bring suits expressing social condemnation and disapproval to place some limits on the plaintiffs' standing. On the other hand, arbitrariness of a different sort is inevitable when one considers two plaintiffs suffering identical traumatic injuries in two different accidents, one through negligence, the other through malice. Though physically and emotionally their ordeals may be the same, the former is in some sense disadvantaged in comparison to the latter in that he cannot multiply his recovery through a punitive damages award.[13]
 
 
 18
 In short, it is necessary to bear in mind that the reasons and rules of a remedial law directed generally toward compensation cannot be transferred unthinkingly to examine remedies of a very different kind. These observations are made not only to buttress our view of the closeness of fit between the ends and the means of the statutory scheme in question, but also to make clear that the result we reach is not the product of mere mechanical manipulation of equal protection formalism under the rational relationship test.
 
 
 19
 We think that the application of equal protection under the California Constitution requires that the classification, in a case such as the one before us, must advance a discernible purpose in a rational manner.[14] We hold that the punitive damage limitation is constitutional in this respect. The purpose of section 377 is "to enable the heirs and certain specified dependents of a person wrongfully killed to recover compensation for the economic loss and deprivation of consortium they suffer as a result of the death." Justus v. Atchison, 19 Cal.3d 564, 581-82, 139 Cal.Rptr. 97, 108-09, 565 P.2d 122, 133-34 (1977). Another goal of the statute is "placing reasonable limits on wrongful death actions in this state." Id. Disallowance of punitive damages serves this goal at least to some extent: it does reduce the kinds and therefore the total amounts of claims, and it also preserves the purely compensatory nature of the cause of action.
 
 
 20
 The case of Pease v. Beech Aircraft Corp., 38 Cal.App.3d 450, 113 Cal.Rptr. 416 (1974), illustrates the abrupt upward rise that wrongful death awards might take if punitive damages were allowed. For the deaths of four persons who died in a plane crash, the jury awarded over $4,000,000 compensatory damages and over $17,000,000 punitive damages. Id., 38 Cal.App.3d at 454, 113 Cal.Rptr. at 419. The frequently violent and dramatic circumstances of accidents that lead to wrongful death actions not only would pose this danger of extreme awards, but also might increase the temptation for a jury to award punitive damages even when concrete elements of fraudulent or intentional wrongdoing are absent.
 
 
 21
 The limitation also advances the purposes of the survival and punitive damages statutes. In so stating it is important to note the contrast in remedies of the two enactments. The survival statute is best understood as a matter of probate law, not tort law. Its goal is to insure that the estate of a decedent loses no valuable rights possessed by him during his life by reason of his death, whether these rights arise from tort, contract, or other principles. It is fortuitous, but hardly unconstitutional, that the legal consequences of an event differ depending on whether it occurs just before or just after death. See, e. g., Guyton v. Phillips, 606 F.2d 248 (9th Cir. 1979) (complaint does not state cause of action because conspiratorial acts allegedly violating 42 U.S.C. §§ 1983, 1985 occurred immediately after defendants shot and killed decedent); cf. Justus v. Atchison, supra (wrongful death statute makes fatal injury actionable one minute after fetus is born, but not one minute before, held rational and constitutional). Put differently, it would be the essence of a remedial straitjacket for a court to hold that a legislature cannot constitutionally provide for the survival, in spite of a decedent's death, of claims he acquired before death, without simultaneously providing for the creation, because of his death, of a new claim acquired at the instant of death.
 
 
 22
 There is a second reason for finding the purpose of the punitive damage provision served by allowing punitive damages in survival actions and personal injury actions but not in wrongful death actions. In its own words, section 3294 of the California Civil Code is to effect punishment and deterrence. The deterrence is sharpest and the punishment best focused when there is a payment directly from the tortfeasor to the victim, the latter being the person most directly involved in the accident and best in a position to judge the culpability of the defendant, and therefore the one to whom payment by the tortfeasor signifies punishment in the most precise form. See 4 B. Witkin, Summary of California Law § 853 (8th ed. 1974).[15]
 
 
 23
 For the foregoing reasons we find that California's disallowance of punitive damages in wrongful death actions violates neither the Federal Constitution nor the California Constitution.[16]
 
 
 24
 The judgment below is REVERSED and the case is REMANDED for further proceedings.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The two state causes of action granting recovery for death are:
 § 573. Actions by or against executor or administrator; recovery of damages; death of plaintiff before judgment; simultaneous death
 Except as provided in this section no cause of action shall be lost by reason of the death of any person but may be maintained by or against his executor or administrator.
 In an action brought under this section against an executor or administrator all damages may be awarded which might have been recovered against the decedent had he lived except damages awardable under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant.
 When a person having a cause of action dies before judgment, the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived, and shall not include damages for pain, suffering or disfigurement.
 This section is applicable where a loss or damage occurs simultaneously with or after the death of a person who would have been liable therefor if his death had not preceded or occurred simultaneously with the loss or damage.
 Nothing in this section shall be construed as making assignable things in action which are of such a nature as not to have been assignable prior to the enactment of the 1961 amendment to this section.
 Cal.Prob.Code § 573 (West Supp.1979).
 § 377. Wrongful death; right of action; damages; consolidation of actions
 (a) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured. If any other person is responsible for any such wrongful act or neglect, the action may also be maintained against such other person, or in case of his or her death, his or her personal representatives. In every action under this section, such damages may be given as under all the circumstances of the case, may be just, but shall not include damages recoverable under Section 573 of the Probate Code. The respective rights of the heirs in any award shall be determined by the court. Any action brought by the personal representatives of the decedent pursuant to the provisions of Section 573 of the Probate Code may be joined with an action arising out of the same wrongful act or neglect brought pursuant to the provisions of this section. If an action be brought pursuant to the provisions of this section and a separate action arising out of the same wrongful act or neglect be brought pursuant to the provisions of Section 573 of the Probate Code, such actions shall be consolidated for trial on the motion of any interested party.
 Cal.Civ.Proc.Code § 377 (West Supp.1979).
 The plaintiffs have, by stipulation, forsaken any opportunities they may have had to recover punitive damages under the survival statute, § 573, such as by theories accepted in Stencel Aero Eng'r. Corp. v. Superior Court, 56 Cal.App.3d 978, 985-88, 128 Cal.Rptr. 691, 694-97 (1976), and Dunwoody v. Trapnell, 47 Cal.App.3d 367, 120 Cal.Rptr. 859 (1975). See 427 F.Supp. at 702 n.1(f), 703 n.2. The propriety of raising an equal protection challenge grounded on an adverse comparison between one statute plaintiffs rely on and another they could possibly have relied on but chose not to, is questionable, but the argument does not influence our decision in any event.
 For a discussion of the relation between the two causes of action, see Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 591-95, 94 S.Ct. 806, 818-820, 39 L.Ed.2d 9 (1974); II S. Speiser, Recovery for Wrongful Death 408-11 (2d ed. 1975). See also Malone, The Genesis of Wrongful Death, 17 Stan.L.Rev. 1043 (1965).
 Exemplary damages are governed by the following provision:
 § 3294. Exemplary damages; when allowable
 In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
 Cal.Civ.Code § 3294 (West 1970).
 
 
 [2]
 California courts have uniformly held that the statute allowing punitive damage recoveries generally in tort actions is available for death recovering only in survival actions and not in wrongful death suits. See, e. g., Tarasoff v. Regents of the University of California, 17 Cal.3d 425, 450, 131 Cal.Rptr. 14, 33, 551 P.2d 334, 353 (1976); Pease v. Beech Aircraft Corp., 38 Cal.App.3d 450, 113 Cal.Rptr. 416 (1974); Note, 15 Santa Clara Law. 507 (1975)
 Various briefs filed for plaintiffs-appellees advance plausible historical and policy arguments to the effect that this limitation is unnecessary or incorrect as a matter of statutory interpretation. The arguments would be germane if made to the California Supreme Court, but we are not in a position to weigh them. We are bound to follow that court's 1977 holding to the contrary in Tarasoff. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The correctness of Tarasoff's statutory interpretation is supported by the legislature's failure to amend § 377 to include punitive damages despite attention having been drawn to their omission.
 
 
 [3]
 The relevant sections of the California Constitution are:
 Due process and equal protection; pupil school assignment or transportation; privileges and immunities
 Sec. 7. (a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws. . . .
 Cal.Const. art. I, § 7 (as amended, 1974, 1979);
 Uniform operation of laws; local or special laws
 Sec. 16. (a) All laws of a general nature have uniform operation.
 id., art. IV, § 16(a) (as amended, 1974).
 
 
 [4]
 We do not apply a middle-tier analysis for three reasons. First, both state and federal Supreme Courts have declined frequent invitations to announce or articulate such an analysis. Second, both courts have analyzed tort recovery limits in terms of a rational bearing upon a legislative objective. Third, the relatively nongrievous deprivation, if indeed it can be called such, of a limit on who may act as a private attorney general by seeking punitive damages makes this case particularly inappropriate to inaugurate such an analysis. Additional drawbacks of this proposed innovation are discussed in Hawkins v. Superior Court, 22 Cal.3d 584, 607-10, 150 Cal.Rptr. 435, 450-51, 586 P.2d 916, 931-32 (1978) (Bird, C. J., concurring); Linde, Due Process of Lawmaking, 55 Neb.L.Rev. 197 (1976)
 
 
 [5]
 Judicial restructuring of a matter as complex as the incidence and effects of punitive damages would be especially prone to unforeseeable error. See generally Breit & Elzinga, Antitrust Enforcement and Economic Efficiency: The Uneasy Case for Treble Damages, 17 J.L. & Econ. 329 (1974) (complex analysis necessary to evaluate utility of exemplary damages in one area of civil law); Note, State Economic Substantive Due Process: A Proposed Approach, 88 Yale L.J. 1487, 1492-94 & n. 26, 1508-10 & n. 88 (1979) (judicial alteration of economic legislation may be dysfunctional)
 
 
 [6]
 See, e. g., Washington v. Confederated Bands and Tribes, 439 U.S. 63, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979) (reversing appellate holding "checkerboard" jurisdictional allocation wholly arbitrary and irrational)
 
 
 [7]
 This point also serves to distinguish the recent decision of the California Court of Appeal in American Bank & Trust Co. v. Community Hospital, 104 Cal.App.3d 219, 163 Cal.Rptr. 513 (1980), in which the court invalidated a medical malpractice recovery limitation. The limitation invalidated in that case under the California Constitution restricted the amount of compensatory damages that were recoverable. Additionally, the effect of the law was somewhat discriminatory, in that one particular class of tortfeasors those guilty of medical malpractice was benefited at the expense of a narrower class of plaintiffs those injured by medical malpractice
 
 
 [8]
 See note 3, supra
 
 
 [9]
 The California equal protection guarantee, while structurally similar to the federal, has on occasion been applied differently in that some interests or categories are considered fundamental or suspect under the former but not the latter. See, e. g., Serrano v. Priest, 18 Cal.3d 728, 135 Cal.Rptr. 345, 557 P.2d 929 (1976); Sail'er Inn v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529, 538-43 (1971). In addition, when an interest is important but not "fundamental," the more deferential mode of equal protection analysis may be applied by California courts in a somewhat stricter fashion than usual, by requiring a closer fit between ends and means than is the norm. Compare Cooper v. Bray, 21 Cal.3d 841, 148 Cal.Rptr. 148, 582 P.2d 604 (1978) (limitation on tort cause of action unconstitutional) with Justus v. Atchinson, 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122 (1977) (limitation on tort cause of action constitutional); cf. pp. 1320-1321 infra (discussing why unusual nature of guest statute elicited particular constitutional scrutiny in Cooper ). It may be a significant distinction between the two decisions just cited that Cooper involved a common-law, and Justus a statutory, cause of action
 
 
 [10]
 The trial court formulated a hypothetical illustration to demonstrate the law's alleged irrationality. See 427 F.Supp. at 706. The hypothetical facts, briefly, are a defendant's willful and reckless driving, and his colliding with a family car, thus killing two passengers, and causing other personal injuries and property damage. The trial court considered it a paradigm of unreason that California law "would permit the recovery of punitive damages as well as compensatory damages for injury (to property and non-fatal bodily injury) . . . but would not sanction the recovery of punitive damages for the death of either the mother or the father . . . ." Id. The particulars of this hypothetical would be less important if they did not embody the core of criticism nearly uniformly directed at the limitation at issue here. See, e. g., McClelland & Truett, Survival of Punitive damages in Wrongful Death Cases, 8 U.S.F.L.Rev. 585 (1974); Note, Punitive Damages in Wrongful Death, 20 Clev.St.L.Rev. 301 (1971). As the entirety of our discussion indicates, we believe that the basis of these criticisms of the limit prohibiting punitive damages is unsound
 
 
 [11]
 See Note, The Imposition of Punishment by Civil Courts: A Reappraisal of Punitive Damages, 41 N.Y.U.L.Rev. 1158, 1168-69 (1966)
 
 
 [12]
 See generally Note, Punitive Damages Under Federal Statutes: A Functional Analysis, 60 Calif.L.Rev. 191 (1972); Note, supra note 11
 
 
 [13]
 Cf. Rabin, Dealing with Disasters: Some Thoughts on the Adequacy of the Legal System, 30 Stan.L.Rev. 281, 297 (1978) (noting that even where punitive damages recoverable, arbitrary factors may govern their award)
 
 
 [14]
 This is a synthesis of the California Supreme Court's various formulations of the applicable state equal protection standard. See, e. g., Cooper v. Bray, 21 Cal.App.3d 841, 855, 148 Cal.Rptr. 148, 156, 582 P.2d 604, 612 (1978) (serious and genuine inquiry into correspondence between statute's goals and classifications); Justus v. Atchison, 19 Cal.3d 564, 581, 139 Cal.Rptr. 97, 108, 565 P.2d 122, 133 (1977) (classification will be upheld unless beyond rational doubt arbitrary discrimination between similar classes made without reasonable cause); Brown v. Merlo, 8 Cal.3d 855, 861, 106 Cal.Rptr. 388, 392, 506 P.2d 212, 216 (1973) (classification must rest upon difference having fair and substantial relation to object of legislation) (borrowing standard from U. S. Supreme Court's gender cases); Note, Judicial Activism in Tort Reform: The Guest Statute Exemplar and a Proposal for Comparative Negligence, 21 U.C.L.A.L.Rev. 1566, 1569-86 (1974)
 
 
 [15]
 It is not unreasonable to assume that the person best in a position to judge the culpability of a defendant, and thus the propriety of suing for punitive damages, is the person most directly involved in the accident or invasion of right, namely, the victim himself. This accounts for allowing punitive damages in personal injury actions, where the victim is the plaintiff, and in survival actions, where by hypothesis the victim survives the accident and may survive long enough to give his heirs and representatives his own account of the tortious occurrence, but not in wrongful death actions such as in the case before us where the victim's death is nearly instantaneous. See generally Note, supra note 12; Note, supra note 11
 
 
 [16]
 In so holding we join other courts which have determined that similar limits on wrongful death statutes do not violate the federal guarantee of equal protection of the law. See Huff v. White Motor Corp., 609 F.2d 286, 298 (7th Cir. 1979); Cyr v. B. Offen & Co., 501 F.2d 1145, 1148 n. 2 (1st Cir. 1974); Johnson v. International Harvester Co., 487 F.Supp. 1176 (D.N.D. 1980)