[Civ. No. 50875. First Dist., Div. Four. June 22, 1981.]

FORD MOTOR COMPANY, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent.
EDELL CANADY et al., Real Parties in Interest.

---

COUNSEL

Barfield, Barfield, Dryden & Ruane, Mattathias N. Smith and John H. O'Reilly for Petitioner.

No appearance for Respondent.

Bostwick & Tehin and Bruce Robert Pfaff for Real Parties in Interest.

---

OPINION

**CHRISTIAN, J.**—Ford Motor Company, defendant in a wrongful death action, petitions this court for a writ of mandate requiring respondent superior court to sustain a demurrer to a cause of action seeking punitive damages.

Real parties in interest sued petitioner for the wrongful death of their son, a passenger in a Pinto automobile which burned when struck by another automobile. In two causes of action real parties sought compensatory damages based on theories of negligence and product liability. In a third cause of action real parties sought punitive damages on allegations that petitioner had acted maliciously, oppressively, fraudulently and in conscious disregard for the safety of others in marketing the Pinto automobile.

Petitioner demurred to the third cause of action, asserting that punitive damages are not recoverable in a wrongful death action. Real parties argued in opposition to the demurrer that the denial of punitive damages in wrongful death actions violates equal protection guarantees in the California and United States Constitutions (citing *In re Paris Air Crash of March 3, 1974* (C.D.Cal. 1977) 427 F.Supp. 701). Respondent court overruled the demurrer. Thereafter, the United States Court

of Appeals reversed the decision of the district court which had been relied on by respondent court. ■ The appellate court held that the California statute precluding punitive damages in wrongful death actions did not violate either the federal or California Constitutions. (*In re Paris Air Crash* (9th Cir. 1980) 622 F.2d 1315, cert. den. 449 U.S. 976 [66 L.Ed.2d 237, 101 S.Ct. 387].) Respondent court declined to change its ruling, and this writ proceeding ensued.

As real parties concede, it has long been established in California that punitive damages may not be recovered in a wrongful death action. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 450 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Fox* v. *Oakland Con. St. Ry.* (1897) 118 Cal. 55, 67 [50 P. 25]; *Lange* v. *Schoettler* (1896) 115 Cal. 388, 391 [47 P. 139]; *Stencel Aero Engineering Corp.* v. *Superior Court* (1976) 56 Cal.App.3d 978, 983 [128 Cal.Rptr. 691]; *Pease* v. *Beech Aircraft Corp.* (1974) 38 Cal.App.3d 450, 460-462 [113 Cal.Rptr. 416]; *Doak* v. *Superior Court* (1968) 257 Cal.App.2d 825, 836 [65 Cal.Rptr. 193, 27 A.L.R.3d 1362].) The decisions establishing this rule have done so by interpreting the wrongful death statute. (*Lange* v. *Schoettler, supra*, 115 Cal. at p. 391; *Pease* v. *Beech Aircraft Corp., supra*, 38 Cal.App.3d at pp. 460-462.) Real parties point out that a wrongful death claimant receives less favorable treatment than all other tort plaintiffs in that punitive damages are unavailable to him. Real parties assert that this disparate treatment denies equal protection to heirs suing under the wrongful death statute. ■ The constitutional guarantee of equal protection requires that persons who are similarly situated receive similar treatment. (*Reed* v. *Reed* (1971) 404 U.S. 71, 76 [30 L.Ed.2d 225, 229-230, 92 S.Ct. 251].) ■ A plaintiff in a wrongful death action is not similarly situated to all other tort plaintiffs. He asserts a right which was specially created by statute, the right to recover on his own behalf for harm which was done to another. The conventional tort plaintiff recovers for harm which is personal to him. ■ The equal protection guarantee is not violated when persons in different situations receive different treatment.

■ Real parties also contend that the punitive damages rule denies equal protection to heirs of an injured person who dies instantaneously. No heir may recover punitive damages on his own behalf. However, where an injured person does not die immediately, his heirs will be able to recover punitive damages indirectly; a cause of action for exemplary damages will survive him, for all loss or damages sustained by him prior to death. (Prob. Code, § 573.) Real parties contend that the distinction

between an injured person who dies instantaneously and one who does not is irrational.

The heirs of an injured person who dies instantaneously and of one who does not are similarly situated. Both groups may sue on their own behalf under the wrongful death act and on behalf of the decedent under the survival statute. (Code Civ. Proc., § 377; Prob. Code, § 573.) The only apparent distinction between the two groups is the manner in which their decedent died.

■ Legislation which treats two similar groups differently must be scrutinized to assure that the statutory classification is justified. The level of scrutiny depends on the nature of the constitutional interest which is at stake. The use of suspect classifications or the invasion of fundamental rights is subject to strictest scrutiny; otherwise the distinction between classes must simply bear some rational relationship to a valid legislative object. (*McGowan* v. *Maryland* (1961) 366 U.S. 420 [6 L.Ed.2d 393, 81 S.Ct. 1101].)

This "rational basis" test is the appropriate measure for the constitutionality of the wrongful death statute under both federal and California law. "If we find a rational relation between the statute and a legislative object, then the statute limiting tort liability is valid and no further or more exacting review is required.... [T]he opportunity to act as private attorneys general to effect the deterrence and retribution functions of section 3294 of the California Civil Code [is] far...from being a fundamental personal right ...." (*In re Paris Air Crash, supra,* 622 F.2d 1315, 1318, 1319.) Although equal protection analysis is somewhat different under California law, two recent decisions have agreed that the "rational basis" test is the appropriate standard of review of the wrongful death statute. (See *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122]; *Georgie Boy Manufacturing, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 217 [171 Cal. Rptr. 382].)

■ The purpose of restricting the plaintiff in a wrongful death action to compensatory damages is to place a reasonable limit on his recovery. (*Justus* v. *Atchison, supra,* 19 Cal.3d 564, 582.) The Legislature apparently feared that recovery would be excessive in cases involving death. (*Georgie Boy Manufacturing, Inc.* v. *Superior Court, supra,* 115 Cal.App.3d 217, 225.) Also, the deterrence and retribution pur-

poses of the punitive damages statute are best served when the tortfeasor must pay exemplary damages to the victim personally. (*In re Paris Air Crash, supra*, 622 F.2d 1315, 1323.) The distinction between an injured person who dies instantaneously and one who does not is rationally related to a valid legislative objective. The statutory scheme for wrongful death actions in California is constitutional on its face. (*Georgie Boy Manufacturing, Inc.* v. *Superior Court, supra*, 115 Cal.App.3d at p. 226; cf. *Grimshaw* v. *Ford Motor Company* (1981) 119 Cal.App.3d 757, 835 [174 Cal.Rptr. 348].)

A writ will issue, commanding respondent court to sustain the demurrer to the third cause of action.

**RATTIGAN, Acting P. J.—**

 I concur in the judgment on the authority of the very recent holding by another Court of Appeal that Code of Civil Procedure section 377 is constitutional. (*Georgie Boy Manufacturing, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 217, 226 [171 Cal.Rptr. 382].) That court relied in part on California decisions it cited and described as "a long line of cases which tacitly and impliedly approved the constitutionality" of the statute. (*Ibid.*) I do not agree with the court's characterization of the decisions it cited, and I view the result it reached as a holding of first impression in the law of this state. My concurrence in the present judgment is based on that holding and the current absence of higher authority commanding a contrary conclusion.

**POCHÉ, J.—**I respectfully dissent.

In this state the recoverability of punitive damages in a death case depends upon whether the decedent became such instantaneously or less quickly. The magic is in determining whether the victim had "a cause of action" (Prob. Code, § 573) before he died: if he did, it survives together with a punitive measurement of damages.[1] In short, a malicious actor is subject to such punishment when he harms property, when he causes personal injury or nonimmediate death, but not when he dispatches you straightaway.

---

[1]Observers not constrained by *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], have characterized the judicial interpretation of the statutes involved as "a classic example of *a priori* judicial reasoning and the strangle-hold ancient rubric possesses" involving a court "which totally closed

The facts of this case highlight some of the unusual mechanics of the rule. The Ford Pinto immediately burst into flames when struck from the rear. Terrance Canady, whose passenger door was jammed by the impact, was burned to death. The driver, Jerry O'Neal, escaped without serious physical injury. Ford Motor Company's conduct in creating and marketing a type of vehicle with known dangerous propensities was the basis for the claim for punitive damages. Terrance's heirs may not recover a punitive award against Ford although Jerry O'Neal, the driver who was sitting no more than two feet from Terrance at the moment of impact, may seek such damages along with his personal injury claim.

The contention of the lead opinion is that distinguishing between the heirs of a person whose instantaneous death was maliciously caused by a tortfeasor and the heirs of a person whose more gradual demise was similarly produced does not deny equal protection of the laws. Two "rational bases" are suggested to justify the distinction.

First we are told that "apparently" the Legislature feared recovery would be excessive in cases involving death. This is not apparent at all. There is no legislative history whatsoever to support the belief the lawmakers had any concern for the so-called danger of excessive recoveries in death cases.[2] If they had such worries there would be no reason to allow survivors of a person who died slowly to recover punitive damages. A slow death is also a death case.

The only other justification offered by the single member lead opinion is the pronouncement that the purposes of punitive damages are best served when the tortfeasor must pay them "to the victim personal-

---

its eyes ...." (McClelland & Truett, *Survival of Punitive Damages in Wrongful Death Cases* (1974) 8 U.S.F. L.Rev. 585, 605-606, fns. 73 and 75.)

More flowery comment comes from the federal bench: "Ultimately and graphically this litigation points up the absurdity of the discriminatory classification that has been countenanced in California. If these same plaintiffs were in a position to prove as a practical reality personal injuries and/or property damage experienced by their decedents the entire question of punitive damages with which we have struggled would have been obviated. They could—through estate distribution under P.C. § 573—without question recover the *same* punitive damages they now claim in a different capacity. Is not a rose still a rose?" (*In re Paris Air Crash* (C.D.Cal. 1977) 427 F.Supp. 701, 709, revd. in *In re Paris Air Crash* (9th Cir. 1980) 622 F.2d 1315, cert. den. 449 U.S. 976 [66 L.Ed.2d 237, 101 S.Ct. 386]; italics in original.)

[2]Whether such a concern would be based on reason is doubtful. The only California decision reaching the same result confirms there is no empirical data to support such a fear. (*Georgie Boy Manufacturing, Inc.* v. *Superior Court, supra*, 115 Cal.App.3d 217, 225, fn. 4 [171 Cal.Rptr. 382].)

ly." My guess is that the wrongdoer is punished and deterred pretty well by the pain of paying *someone*. The Legislature thinks so too, since it allows an executor to recover punitive damages in survival actions. (See, Prob. Code, § 573.)

It is anomalous at best to uphold a statute as resting on two rationales ("rational basis") each of which has been explicitly rejected by the Legislature.[3]

I would deny the petition and discharge the alternative writ because the trial court was acting as mandated by the equal protection clauses of both the California and United States Constitutions in overruling the demurrer to the third cause of action.

The petition of real parties in interest for a hearing by the Supreme Court was denied September 16, 1981. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[3]It is strikingly odd for the lead opinion to cite the not yet final decision of *Grimshaw* v. *Ford Motor Company* (1981) 119 Cal.App.3d 757 [174 Cal.Rptr. 348] for support on the constitutional issue involved here because that decision is highly critical of the cases relied upon in the lead opinion, in particular, *Georgie Boy* and *In re Paris Air Crash*. A flavor of Justice Tamura's logic is caught in: "Neither case, however, analyzes the constitutional issue in terms of the classes of heirs affected by the statutory bar against recovery of punitive damages in wrongful death actions. A statutory scheme which would punish a tortfeasor if he inflicts death-causing injury which does not result in simultaneous death but would not punish if death occurs instantaneously is difficult to explain on the basis of any conceivable, realistic, rational legislative purpose." (*Id.* at p. 834.) For those who want more of Justice Tamura's cooking, careful digestion of his footnote 29 is recommended.