734 A.2d 243

HAROLD E. SMITH, EXECUTOR OF THE ESTATE OF HELEN V. ROBBINS, DECEASED, PLAINTIFF–RESPONDENT, v. ALAN L. WHITAKER, JR., DEFENDANT, AND COASTAL OIL OF NEW YORK, INC. (INCORRECTLY PLED AS COASTAL OIL COMPANY OF NEW YORK, INC. AND FORMERLY KNOWN AS BELCHER COMPANY OF NEW YORK, INC.), DEFENDANT–APPELLANT.

Argued March 16, 1999—Decided July 20, 1999.

*John C. Eastlack, Jr.,* argued the cause for appellant (*Poplar & Eastlack,* attorneys).

*Theodore E. Baker,* argued the cause for respondent (*Lummis, Krell & Baker,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal concerns the availability of punitive damages under the Survivor's Act, *N.J.S.A.* 2A:15–3, and requires us to determine whether evidence of a plaintiff's conscious pain and suffering is necessary to sustain a cause of action under the Act. More precisely, because a plaintiff's pain, suffering and apprehension of impending death form the usual measure of damages under the Survivor's Act, the issue is whether a survival action will lie where, as here, the plaintiff's death appears to have been actually or nearly simultaneous with defendant's injury-causing conduct. We also must determine whether a claim for punitive damages may be asserted when no compensatory damages have been awarded for pain and suffering in the underlying survival action. In addition to those legal issues, we address factual disputes concerning whether defendant's conduct justified the imposition of punitive damages in this case and, if so, whether the amount of punitive damages awarded was excessive.

I

On January 4, 1990, Helen V. Robbins, a sixty-year-old widow, was killed when her 1979 Lincoln Town Car was hit by a 36,000–pound oil truck owned by defendant Coastal Oil Company of New York (Coastal) and driven by defendant Alan L. Whitaker, Jr. (Whitaker). At the time of the collision, Robbins was driving

north on County Route 649 in Commercial Township, Cumberland County, and Whitaker was traveling south on County Road 633. The southbound lane of County Route 633 is governed by two yield signs at the point where it intersects County Route 649. Due to maladjusted brakes, Whitaker was unable to stop the truck as he approached the intersection even though he was "standing" on the brakes. The truck crossed the intersection, struck Robbins's automobile, and "overtopped" it. A state trooper responded to the scene within approximately five minutes of the accident. The trooper observed that Robbins did not appear to be breathing and that she appeared to be unconscious. Robbins was transported to a nearby hospital, where she was pronounced dead.

In June 1990, Harold E. Smith,[1] the nominal plaintiff and executor of Robbins's estate, filed an action against Whitaker and Coastal pursuant to the Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6, and the Survivor's Act, *N.J.S.A.* 2A:15–3. Plaintiff claimed that the Coastal oil truck had been "improperly serviced and maintained, in that the brake systems, air hoses and braking mechanisms were faulty, defective and not in proper working order." By way of damages, plaintiff alleged direct pecuniary loss for support and maintenance, funeral expenses, pain and suffering and loss of enjoyment of life (hedonic damages). In addition, plaintiff sought punitive damages, alleging that defendants' negligent maintenance of the vehicle was "willful, wanton, and with knowledge of a high degree of probable harm to others."

The trial court bifurcated the trial of the compensatory and punitive damages claims. Before the jury was brought into the courtroom to begin the trial on plaintiff's compensatory damages claims, Coastal moved to bar plaintiff's presentation of evidence to support pain and suffering and hedonic damages. Coastal's attorney conceded that there was "no question" that Robbins had "died as a result of injuries sustained in the accident." In addition,

---

[1] Smith died in 1995 and Grant Keller was appointed to replace him as plaintiff.

Coastal conceded its liability for causing the accident. Coastal's attorney noted, however, that it "has candidly been admitted by [plaintiff's] counsel" that "there is not one single item of proof that exists or could be placed before this jury indicating that Mrs. Robbins suffered any conscious pain or endured any suffering at all," because, during discovery, no post-accident witness "indicated any consciousness at all by Mrs. Robbins."

Over plaintiff's objection, the trial court dismissed plaintiff's damage claim "with respect to the pain and suffering," finding that evidence of conscious pain and suffering was required to present to the jury the issue of compensatory damages under the Survivor's Act. The court noted that "there is nothing in the medical reports or in the observations of doctors, nurses, emergency personnel, or any of those people that would suggest that there was conscious pain and suffering." For the same reason, the court, over plaintiff's objection, dismissed plaintiff's damages claim for hedonic damages, because "hedonic damages would have to be based on the victim's own loss of enjoyment" and were therefore not available in this case. The court ruled that plaintiff's claim for punitive damages could go forward in the second phase of the trial.

In that procedural posture, the first phase of the jury trial commenced in May 1995, restricted to only the claims asserted in the wrongful death action. After all sides rested, the parties agreed to the court's suggestion that a different jury be empaneled to decide the issue of punitive damages. The jury returned a unanimous verdict finding defendants liable for $40,178 in actual pecuniary or financial damages. In addition, the parties consented to the addition of $3939, reflecting the net funeral bill and related expenses, for a total judgment of $44,117. On May 26, 1995, the court entered a judgment against defendants reflecting that the jury had "rendered a verdict in the amount of $40,178 pursuant to the Wrongful Death Act, *N.J.S.A.* 2A:15–3 *et seq.*," and that the court had "molded the verdict as to funeral and burial

expenses pursuant to the Survivor's Act, *N.J.S.A.* 2A:31–1 to include the sum of $3,939.00."

After the conclusion of the first trial, Coastal filed a motion to dismiss plaintiff's punitive damages claim and plaintiff cross-moved for a new trial of the wrongful death claim. In support of its motion, Coastal noted that punitive damages are not recoverable under the Wrongful Death Act, and that any award of punitive damages pursuant to the Survivor's Act would have to be supported by a valid underlying judgment of compensatory damages. Coastal argued that no compensatory award under the Survivor's Act was sustainable due to plaintiff's conceded inability to produce evidence that Robbins experienced conscious pain and suffering before dying.

The trial court denied both Coastal's motion to dismiss the punitive damages claim and plaintiff's new-trial motion. The court agreed with Coastal that there was "no question that in this case, as least insofar as the proofs are concerned, the decedent died instantly and there was no proof to the contrary." Nonetheless, the court ruled that plaintiff's claims for punitive damages could go forward under the authority of the Survivor's Act. In addition, at Coastal's request, the court clarified that the award for funeral expenses of $3939 "would properly be included in the wrongful death aspect of the case."

In July 1996 the punitive damages trial began before a new jury. Plaintiff and Coastal consented to the dismissal of the punitive damages claims against Whitaker. The evidence adduced in that proceeding showed that one month prior to the accident the State Police, after inspecting Whitaker's vehicle, had cited Coastal with numerous safety violations, including two "out-of-service" conditions that indicated the vehicle would not be considered safe to operate until those conditions were corrected. There was no evidence that the necessary repairs were made; rather, it appeared Coastal knowingly and deliberately operated the vehicle in its "out-of-service" condition for several weeks. Evidence also was presented that in the weeks leading up to the accident both

Whitaker and Coastal were aware that the brakes were not working properly. An inspection at the time of the accident revealed that both rear brakes were so far out of adjustment as to render the vehicle unsafe to drive. Finally, the evidence suggested that Coastal provided no instruction or training for its drivers regarding proper brake safety or maintenance and that Coastal simply ignored regulatory record-keeping requirements regarding its vehicle maintenance.

At the conclusion of that trial, the jury found Coastal liable for punitive damages in the amount of $1,250,000. In September 1995, the court entered an order denying Coastal's new-trial motion. In that order, at Coastal's request, the court amended the May 26, 1995, judgment, reallocating the award of funeral expenses to reflect that the "molded verdict including funeral and burial expenses were recovered pursuant to the Wrongful Death Act." Both parties then appealed.

The Appellate Division affirmed, concluding that plaintiff's punitive damages claims were sustainable even in the absence of an underlying award of compensatory damages. 313 *N.J.Super.* 172, 175–90, 713 *A.*2d 20 (1998). The Appellate Division also rejected Coastal's contentions that its conduct was not sufficiently egregious to justify an award of punitive damages and that the amount of the award was excessive. *Id.* at 190–98, 201–03, 713 *A.*2d 20. We granted Coastal's petition for certification. 156 *N.J.* 410, 719 *A.*2d 642 (1998).

II

A

At common law, no civil remedy was available for a personal injury resulting in death, either to the decedent's estate or the decedent's dependents. *Kern v. Kogan,* 93 *N.J.Super.* 459, 470, 226 *A.*2d 186 (Law Div.1967). The common law's non-recognition of claims for wrongful death is traceable to "the pronouncement in *Baker v. Bolton,* 1 *Camp.* 493, 170 *Eng. Rep.* 1033 (1808), that 'in a

civil Court, the death of a human being could not be complained of as an injury and ... the damage, as to the [deceased], must stop with the period of her existence.'" *Giardina v. Bennett,* 111 *N.J.* 412, 422, 545 *A.*2d 139 (1988) (alteration in original).[2] The "rigors of this harsh and technical rule were relaxed and ameliorated," *Kern, supra,* 93 *N.J.Super.* at 465, 226 *A.*2d 186, first in 1848 by the Wrongful Death Act, now codified as *N.J.S.A.* 2A:31–1 to –6, and later in 1855 by the Survivor's Act, now codified as *N.J.S.A.* 2A:15–3. *Soden v. Trenton & Mercer County Traction Co.,* 101 *N.J.L.* 393, 394, 127 *A.* 558 (E. & A.1925).

Although both types of actions arise from the identical occurrence, *i.e.,* the death of the plaintiff, they serve different purposes and are designed to provide a remedy to different parties. *Id.* at 398–99, 127 *A.* 558. "The fundamental purpose of a wrongful death action is to compensate survivors for the pecuniary losses they suffer because of the tortious conduct of others." *Alexander v. Whitman,* 114 *F.*3d 1392, 1398 (3d Cir.1997) (citing *Alfone v. Sarno,* 168 *N.J.Super.* 315, 403 *A.*2d 9 (App.Div.1979)), *modified on other grounds,* 87 *N.J.* 99, 432 *A.*2d 857 (1981), *cert. denied,* —— *U.S.* ——, 118 *S.Ct.* 367, 139 *L.Ed.*2d 286 (1997).

An award of damages in a wrongful death action "is not a matter of punishment for an errant defendant or of providing for decedent's next of kin to a greater extent than decedent himself would have been able, but is rather a replacement for that which decedent would likely have provided and no more." The amount of recovery is based upon the contributions, reduced to monetary terms, which the decedent might reasonably have been expected to make to his or her survivors.

---

2 The rule was

"probably ... a product of the felony-merger rule—a doctrine that disallowed recovery for an act that constituted both a tort and a felony." *Summerfield v. Superior Court, Maricopa Cty.,* 144 *Ariz.* 467, 471, 698 *P.*2d 712, 716 (1985). Under this rule a tort was considered less important than an offense against the Crown and, as a result, was merged into, or preempted by, a felony. As noted in *Moragne v. States Marine Lines,* 398 *U.S.* 375, 382, 90 *S.Ct.* 1772, 1778, 26 *L.Ed.*2d 339, 346 (1970),

[t]he doctrine found practical justification in the fact that the punishment for the felony was death of the felon and the forfeiture of his property to the Crown; thus, after the crime had been punished, nothing remained of the felon or his property on which to base a civil action.

[*Giardina, supra,* 111 *N.J.* at 423 n. 1, 545 *A.*2d 139.]

[*Alexander, supra,* 114 *F.*3d at 1398 (citation omitted).]

Consistent with its remedial purpose, damages under the Act are expressly limited to "the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased." *N.J.S.A.* 2A:31–5.

Further, courts interpreting the Act have consistently held that it permits recovery only of a survivor's calculable economic loss and that the Act does not support an award of punitive damages. *See Meehan v. Central R.R. Co.,* 181 *F.Supp.* 594, 598 (S.D.N.Y. 1960) (dismissing claim for punitive damages under New Jersey Wrongful Death Act); *Carey v. Lovett,* 132 *N.J.* 44, 67, 622 *A.*2d 1279 (1993) ("Damages for the wrongful death of an infant, like wrongful-death damages generally, are limited to economic matters."); *Graf v. Taggert,* 43 *N.J.* 303, 311, 204 *A.*2d 140 (1964) ("Our [Wrongful] Death Act was not intended to grant damages against a tortfeasor merely to punish him."); *DeFelice v. Beall,* 274 *N.J.Super.* 592, 599, 644 *A.*2d 1136 (App.Div.) ("The purpose of New Jersey's Wrongful Death Act is to provide compensation for pecuniary losses suffered by survivors of those killed by wrongful acts."), *certif. denied,* 138 *N.J.* 268, 649 *A.*2d 1288 (1994); *Goss v. American Cyanamid, Co.,* 278 *N.J.Super.* 227, 241, 650 *A.*2d 1001 (App.Div.1994) ("An award of damages in a wrongful death action is not intended to punish the tortfeasor, but only to replace that which the decedent likely would have provided."); *Turon v. J. & L. Constr. Co.,* 8 *N.J.* 543, 555–56, 86 *A.*2d 192 (1952) (noting remedial purpose of Wrongful Death Act and observing that from Act's inception damages recoverable thereunder intended to be limited to "pecuniary injuries" sustained by qualified beneficiaries).

Plaintiff does not dispute the unavailability of punitive damages under the Wrongful Death Act, acknowledging that plaintiff's claims for punitive damages clearly were asserted under the Survivor's Act. Coastal contends, however, that because the only compensatory award below was rendered in the wrongful death action, and because no separate judgment awarding compensatory

or even nominal damages was entered pursuant to the Survivor's Act prior to the punitive damages phase, the punitive damages action necessarily, and impermissibly, arose under the Wrongful Death Act.

As the Appellate Division found, however, the contemplation of both the court and the parties unquestionably was that plaintiff's punitive damages claims were to be addressed as the sole measure of relief available to plaintiffs under the survival action, plaintiff's claims for pain and suffering having been dismissed. Therefore, the critical issue before this Court is whether plaintiff established a valid claim for punitive damages under the Survivor's Act in the absence of an underlying award of compensatory damages for pain and suffering.

### B

Survival actions, like wrongful-death actions, were unknown at common law. *Kern, supra,* 93 *N.J.Super.* at 470, 226 *A.*2d 186. The death of the plaintiff gave his representative no remedy against the tortfeasor. *Soden, supra,* 101 *N.J.L.* at 395, 127 *A.* 558. In 1855, New Jersey passed the Executors and Administrators Act, or Survivor's Act, now codified as *N.J.S.A.* 2A:15–3, allowing a decedent's representatives the right to bring an action for trespass to person or property in the same manner as if the decedent had been living. *Soden, supra,* 101 *N.J.L.* at 395, 127 *A.* 558. Unlike a wrongful death action, which is a derivative action arising in favor of beneficiaries named under that act, *Giardina, supra,* 111 *N.J.* at 423–24, 545 *A.*2d 139, the Survivor's Act preserves to the decedent's estate any personal cause of action that decedent would have had if he or she had survived.

*N.J.S.A.* 2A:15–3 provides:

> Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living.

In those actions based upon the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor or administrator may recover all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

The Survivor's Act was intended to be supplementary to the Death Act and to "afford[ ] complete and adequate redress to the estates of those who were injured in person or property by injuries causing death," *Kern, supra,* 93 *N.J.Super.* at 472, 226 *A.*2d 186, by allowing the decedent's estate to recover any loss to the decedent that accrued between injury and death, *id.* at 471, 226 *A.*2d 186. The Act was designed to eliminate the arbitrary rule that "grounded a man's right to recover for an injury to his person or estate, inflicted by a tortious act, on the contingency of the party injured surviving to the date of trial." *Id.* at 471, 226 *A.*2d 186. Consistent with that purpose, the Act has been broadly construed "as to suppress the mischief and advance the remedy." *Ibid.* (quoting 1 *Bl. Com.* 87).

The Survivor's Act, in contrast to the Wrongful Death Act, contains no express limitation on the types of damages recoverable under the statute. A majority of states have decided that punitive damages are recoverable in a survival action, *see* Jay M. Zitter, Annotation, *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged,* 30 *A.L.R.*4th 707 § 5 (1984), the typical reasoning being that "[l]ogic dictates that if a wrongdoer may be punished if his victim lives, then surely he should not escape retribution if his wrongful act causes a death," *Leahy v. Morgan,* 275 *F.Supp.* 424, 425 (N.D.Iowa 1967). This Court, however, has not had occasion to address that question. In *Kern, supra,* the Law Division observed that "[n]owhere do the cases in this area indicate that actions for pain and suffering brought under *N.J.S.A.* 2A:15–3 be restricted to compensatory redress, as is indicated by the cases dealing with the Wrongful Death Act." 93 *N.J.Super.* at 475, 226 *A.*2d 186. To the contrary, the *Kern* court noted, the Legislature in enacting the Survivor's Act broadly intended to afford "executors or administrators an action for any trespass done to the person or property of their

testator or intestate." *Id.* at 472, 226 *A.*2d 186. Further, the court observed, prior reported cases involving survival actions appeared to recognize, without expressly so holding, that punitive damages were in fact a permissible form of recovery under the Survivor's Act. *Id.* at 474–75, 226 *A.*2d 186 (citing *Meehan, supra,* 181 *F.Supp.* 594 (upholding punitive damages of $1000 for reckless and wanton conduct that brought about conscious pain and suffering of decedent as well as death), and *Messina v. Petroli,* 11 *N.J. Misc.* 583, 587, 167 *A.* 767 (Cir.Ct.1933) (holding pain and suffering compensable under survival statute and impliedly recognizing availability of punitive damages in action under Executors and Administrators Act)). Thus, in *Kern, supra,* the plaintiff's claims for punitive damages under the Survivor's Act were allowed to stand. 93 *N.J.Super.* at 475–76, 226 *A.*2d 186. Significantly, although the Legislature amended the Survivor's Act in 1969 to allow recovery of funeral expenses, *L.* 1969, *c.* 266, § 1, no action was then taken to overrule *Kern*'s holding regarding the availability of punitive damages in a survival action. See *Walder, Sondak, Berkeley & Brogan v. Lipari,* 300 *N.J.Super.* 67, 77, 692 *A.*2d 68 (App.Div.) (noting principle that when legislature reenacts statute that has been judicially construed there is strong presumption that Legislature intended to leave that interpretation intact), *certif. denied,* 151 *N.J.* 77, 697 *A.*2d 548 (1997). Nor has there been any further modification to the statute in the thirty years since funeral expenses were made available.

## C

As a rule, a claim for punitive damages may lie only where there is a valid underlying cause of action. *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 *N.J.* 37, 45, 477 *A.*2d 1224 (1984). In a negligence action, the maintenance of a valid claim requires the plaintiff to show a breach of duty and resulting damage. *Ibid.* (citing *Stanley Co. v. Hercules Powder Co.,* 16 *N.J.* 295, 315, 108 *A.*2d 616 (1954) (other citations omitted)). In this case, Coastal stipulated negligence and causation, leaving only the

issue of damages for the jury's determination. Coastal argues that because pain and suffering comprise the sole compensable injury in a survival action, no punitive damages may be awarded in the absence of an underlying award of compensatory damages for such pain and suffering.

█ As Coastal notes, the primary damages recoverable in a survival action sounding in tort are for the decedent's pain and suffering between the time of injury and death. *See Foster v. Maldonado,* 315 *F.Supp.* 1179, 1180 (D.N.J.), *petition denied,* 433 *F.*2d 348 (1970). Damages for pain and suffering are permitted only for pain and suffering that is conscious. *Carey, supra,* 132 *N.J.* at 66, 622 *A.*2d 1279. Many states, including New Jersey, have allowed recovery for conscious pain and suffering whenever it can be shown the injured person survived her injuries, however briefly.[3] *See Kellow v. Central Iowa Ry. Co.,* 68 *Iowa* 470, 23 *N.W.* 740, 745 (1885) (holding that survival cause of action accrues to injured person who survives injury for brief moment "as certainly as it would have done if he had lived for a month or a year thereafter"), *reh'g denied,* 68 *Iowa* 470, 27 *N.W.* 466 (1886); *Starkenburg v. Montana,* 282 *Mont.* 1, 934 *P.*2d 1018, 1031 (1997) (holding that plaintiff in survival action bears burden of proving that death was not instantaneous, although a few second's survival constitutes sufficient amount of time to vest accrual of cause of action); *Tirrell v. Navistar Int'l, Inc.,* 248 *N.J.Super.* 390, 407, 591 *A.*2d 643 (App.Div.) (upholding $50,000 award for pain and suffering of oiler who "died practically instantaneously" after truck crushed his chest and hypothesizing that decedent's raising his head before dying was "spasmatic reaction after death;" observing

---

[3] The issue regarding conscious pain and suffering also arises where an accident victim never regains full consciousness before dying, barring recovery under a survival statute even where the victim survives for a considerable length of time after being injured. *See Tri–State Poultry Coop. v. Carey,* 190 *Md.* 116, 57 *A.*2d 812, 814–18 (1948) (holding conscious pain is necessary element to maintenance of survival action, and even survival of injuries for considerable length of time cannot form basis for recovery of damages unless decedent consciously experienced pain and suffering).

that nevertheless "for some finite period the slowly-moving truck dragged decedent under its wheels and the jury was free to infer that decedent had some brief but distinct anticipation of his impending death as well as physical pain and suffering"), *certif. denied,* 126 *N.J.* 390, 599 *A.*2d 166 (1991).

In this case, plaintiff was unable to establish compensable pain and suffering due to the unfortunate circumstance that Robbins apparently was killed immediately upon impact with Coastal's vehicle. The question is whether a plaintiff's inability to establish conscious pain and suffering in a survival action involving instantaneous death bars a claim for punitive damages. See *Nappe, supra,* 97 *N.J.* at 45, 477 *A.*2d 1224 (noting general rule that punitive damages may lie where valid underlying cause of action exists).

As the Appellate Division observed, the irony of a rule requiring conscious pain and suffering is that it makes the recoverability of punitive damages for egregious conduct resulting in death dependent on whether or not the victim died instantaneously. *See Ford Motor Co. v. Superior Court,* 120 *Cal.App.*3d 748, 753, 175 *Cal. Rptr.* 39 (1981) (Poche, J., dissenting) (noting that "malicious actor is subject to [punitive damages] when he harms property, when he causes personal injury or nonimmediate death, but not when he dispatches you straightaway"). Nevertheless, some jurisdictions do consider conscious pain and suffering essential to any recovery of punitive damages, reasoning that any recovery arising directly from a person's death has traditionally, and statutorily, been relegated to actions for wrongful death in which punitive damages are not available. *See, e.g., Ford Motor Co., supra,* 120 *Cal. App.*3d at 749, 175 *Cal.Rptr.* 39; *Rubeck v. Huffman,* 54 *Ohio St.*2d 20, 374 *N.E.*2d 411, 413 (1978); *Wangen v. Ford Motor Co.,* 97 *Wis.*2d 260, 294 *N.W.*2d 437, 463–64 (1980).

 We previously have held that in some cases involving egregious conduct, a punitive damages claim may constitute plaintiff's sole basis for recovery, "at least where some injury, loss, or detriment to the plaintiff has occurred." *Nappe, supra,* 97 *N.J.* at

51, 477 *A.*2d 1224. In *Nappe*, we observed that the true "loss, injury, and detriment" suffered by plaintiff, in this case her death, is not necessarily coextensive with the "compensatory damages" awarded, which is merely "a monetary amount awarded in court to compensate or indemnify a plaintiff." *Id.* at 41 n. 1, 477 *A.*2d 1224. When the value of a real legal injury cannot be measured in money, *id.* at 56, 477 *A.*2d 1224 (O'Hern, J., concurring), a plaintiff who has been substantially harmed may not be able to establish an entitlement to compensatory damages. Under such circumstances, we held in *Nappe* that a defendant should not be freed of responsibility for aggravated conduct because of the fortuitous circumstance that an injured plaintiff cannot prove compensatory damages. *Id.* at 50, 477 *A.*2d 1224. Rather, where a plaintiff suffers substantial legal injury due to a defendant's egregious conduct, nominal damages, supporting a claim of punitive damages, may be awarded to vindicate the invasion of plaintiff's rights. *Id.* at 48, 477 *A.*2d 1224.

Employing similar reasoning, in *Potomac Electric Power Co. v. Smith,* the Maryland Court of Appeals held that recovery of punitive damages in a survival action does not require proof of conscious pain and suffering:

> Under the unique circumstances before us, there has been proof of an "actual loss" or a "showing of compensable injuries" although, aside from the award for funeral expenses, no compensatory damages were awarded in the survivorship action. In arguing that no punitive damages may be awarded, appellant shall not be permitted to rely on the fact that its reckless act instantaneously caused the death of the 15–year–old decedent. Because punitive damages are not recoverable under the wrongful death statute, in cases of instantaneous death punitive damages would be precluded under appellant's theory. Such a result would thwart the policy of punitive damages "to punish the wrongdoer for misconduct and to deter future egregious conduct by others." To establish a policy rewarding defendants otherwise liable for punitive damages for their expediency in causing an innocent person's death would be absurd. We refuse to do so, and we uphold the jury's award of punitive damages in the survivorship claim.
>
> [79 *Md.App.* 591, 558 *A.*2d 768, 793 (citations omitted), *cert. denied,* 317 *Md.* 393, 564 *A.*2d 407 (Md.1989), *overruled on other grounds, United States v. Streidel,* 329 *Md.* 533, 620 *A.*2d 905 (1993).]

Similarly, the trial court in this case refused to accept Robbins's instant death as a basis for precluding a claim for punitive damages:

> Punitive damages would have been a claim available to Mrs. Robbins had she survived. I believe it should not depend on whether or not she died instantly or whether or not she died after an agonizing death. To do so would place the following unusual circumstance that someone who was to do something outrageous and worthy of punitive damages, if the person was killed thereby, and killed instantly, there would be no claim for punitive damages. Whereas if they were less effective in their method and, consequently, the person lingered in the hospital for a year, then punitive damages would apply. I believe that that is not the intent of the Legislature and I don't believe that that was the intent of the decision in *Kern*.
>
> [313 *N.J.Super.* at 179, 713 *A.*2d 20.]

■ As Coastal points out, punitive damages awarded on a "free-standing" basis, *i.e.*, without an award of compensatory damages in the underlying action, ordinarily must be premised on a valid judgment for, at a minimum, nominal damages. *See Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 *F.*3d 262, 281 (3d Cir.1995) (striking down punitive damages award where jury awarded $0 in compensatory damages in underlying claim for tortious interference with prospective business advantage and refusing to "imply" such damages merely because jury was not instructed regarding option of awarding nominal damages); *Lightning Lube, Inc. v. Witco Corp.*, 4 *F.*3d 1153, 1195 (3d Cir.1993) (striking down punitive damages award because jury did not find sufficient injury to award even nominal damages on plaintiff's claim for tortious interference with prospective business advantage, noting that jury had been instructed regarding option of awarding nominal damages); *O'Connor v. Harms*, 111 *N.J.Super.* 22, 29–30, 266 *A.*2d 605 (App.Div.) (striking down punitive damages award against school board members because no compensatory damages awarded in school principal's underlying claim for malicious interference with employment), *certif. denied*, 57 *N.J.* 137, 270 *A.*2d 40 (1970).

In *O'Connor, supra*, the court explained that an award of nominal damages bespeaks a jury's conclusion that the plaintiff suffered a legally cognizable harm:

When there is only a nominal compensatory damage award, such as the traditional six cents symbolic of the diminutive English six-pence piece, there is inherent in that small award a finding by the jury of a violation of a legal right. For example, there might have been a trespass without any substantial damage. But when no compensatory damages are awarded, not even nominal, ... there is an inference that the jury did not find a violation of a legal right, else it would have allowed at least nominal damages. A verdict for punitive damages alone suggests a punishment for malice, without more.

[111 *N.J.Super.* at 29–30, 266 *A.*2d 605.]

Thus, in *O'Connor*, the court found that "the exercise of the board members' legal right to terminate plaintiff's contract for a valid reason is not converted into an actionable wrong, merely because some malice attended the exercise of the legal right." *Id.* at 29, 266 *A.*2d 605; *cf. In re Paris Air Crash v. Plaintiffs in MDL 172*, 622 *F.*2d 1315, 1321 (9th Cir.) (noting that requiring actual injury as predicate to punitive damages claims places reasonable limit on plaintiff's standing to "bring suits expressing social condemnation and disapproval"), *cert. denied by Kalinsky v. General Dynamics Corp.*, 449 *U.S.* 976, 101 *S.Ct.* 387, 66 *L. Ed.*2d 237 (1980).

In 1995, the Legislature amended the Punitive Damages Act to require an award of compensatory damages as a statutory predicate for an award of punitive damages and disallowing nominal damages as a basis for a punitive damages claim. *N.J.S.A.* 2A:15–5.13(c). That provision did not take effect until October 27, 1995, and thus does not govern our disposition of this appeal.

### D

Coastal also challenges the Appellate Division's endorsement of a "presumption of continuing life," that conclusively presumes an injured person's life to have continued unless affirmative evidence is produced showing that death occurred earlier, and shifting to defendants the burden of production to fix a time of death. See *Fontenot v. Southern Farm Bureau Cas. Ins. Co.*, 304 *So.*2d 690, 693 (La.Ct.App.1974), *writ denied,* 307 *So.*2d 640 (La.1975); *Hake v. Manchester Township*, 98 *N.J.* 302, 312 n. 3, 486 *A.*2d 836 (1985); *Fretz v. Anderson*, 5 *Utah* 2d 290, 300 *P.*2d 642, 649–50 (1956), *modified on other grounds and petition for reh'g denied,* 6

*Utah* 2d 169, 308 *P*.2d 948 (1957). Relatedly, the Appellate Division espoused the view that "[d]eath rarely may be instantaneous in fact." 313 *N.J.Super.* at 185, 713 *A*.2d 20. Consistent with that view, some jurisdictions have rejected altogether the notion of "instantaneous death" as an artificial legal fiction, reasoning that because the injury-causing conduct must logically precede the injury it causes, "common sense compels the conclusion that both the cause of death and death itself did not occur in the same split second. The cause of death must come first, and the death must follow as a result." *Justin v. Ketcham,* 297 *Mich.* 592, 298 *N.W.* 294, 295 (1941); *see also Ford v. Maney's Estate,* 251 *Mich.* 461, 232 *N.W.* 393, 461 (1930) (criticizing "legal fiction" of instantaneous death and holding that requisite elements of "cause of action consisted of the duty of care owed . . . to [plaintiff], its breach, and the consequent injury to plaintiff [and] . . . were complete during plaintiff's lifetime"). Coastal contends that the Appellate Division's conferring on plaintiff the benefit of a presumption that Robbins survived her injuries placed an untenable evidentiary burden on defendants in this case and ensures that every wrongful death action will give rise to a claim for punitive damages.

E

Coastal next contends that its alleged conduct was not sufficiently egregious to support the imposition of punitive damages. As we explained in *Nappe,* 97 *N.J.* at 49, 477 *A*.2d 1224, to warrant the imposition of punitive damages

the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another.

*See also Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 610, 691 *A*.2d 350 (1997) (noting that to justify punitive damages award defendant's conduct must be willfully and wantonly reckless or malicious); *DiGiovanni v. Pessel,* 55 *N.J.* 188, 190, 260 *A*.2d 510 (1970) (noting punitive damages may be justified by defendant's "conscious and deliberate disregard of the interests of others") (quoting William Prosser, *Handbook on the Law of Torts* § 2 (2d

ed.1955)). In this case, the issue is whether Coastal's conduct rose to the level of acts "accompanied by a wanton and wilful disregard of the rights of another." *Nappe, supra,* 97 *N.J.* at 49, 477 *A.*2d 1224. Mere negligence, no matter how gross, will not suffice as a basis for punitive damages. *DiGiovanni, supra,* 55 *N.J.* at 190, 260 *A.*2d 510. Rather, plaintiff must prove by clear and convincing evidence a "deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences." *Berg v. Reaction Motors Div.,* 37 *N.J.* 396, 414, 181 *A.*2d 487 (1962), *codified at N.J.S.A.* 2A:15–5.10. "The defendant, however, does not have to recognize that his conduct is 'extremely dangerous,' but a reasonable person must know or should know that the actions are sufficiently dangerous." *Parks v. Pep Boys,* 282 *N.J.Super.* 1, 17, 659 *A.*2d 471 (App.Div.1995).

### F

Finally, Coastal contends that the amount of the punitive damages award was excessive. An otherwise valid award of punitive damages will not be set aside unless "manifestly outrageous," *Allen v. Craig,* 13 *N.J.L.* 294, 301 (Sup.Ct.1833), or "clearly excessive," *Leimgruber v. Claridge Assocs.,* 73 *N.J.* 450, 453, 375 *A.*2d 652 (1977). Punitive damages are awarded "upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future." *Id.* at 454, 375 *A.*2d 652. Because they are "not designed to compensate plaintiffs for their losses," *Bartolo v. Boardwalk Regency Hotel Casino, Inc.,* 185 *N.J.Super.* 540, 544, 449 *A.*2d 1343 (Law Div.1982) (citing *Belinski v. Goodman,* 139 *N.J.Super.* 351, 354 *A.*2d 92 (App.Div.1976)), an award of punitive damages does not logically depend on the extent of the injury sustained by an individual plaintiff. *Bartolo, supra,* 185 *N.J.Super.* at 544–45, 449 *A.*2d 1343. Rather, "the amount of such an award is determined from the perspective of the defendant." *Id.* at 544, 449 *A.*2d 1343. In that regard, the amount awarded should be sufficient to serve the purpose of deterring future misconduct by defendant. Although an award of punitive damages does not depend on any precise ratio between the

amount of the punitive damages and the extent of the loss suffered by a plaintiff, the award must bear "some reasonable relation to the injury inflicted and the cause of the injury." *Leimgruber, supra,* 73 *N.J.* at 457, 375 *A.*2d 652. (We note that, pursuant to the 1995 amendments, the Legislature has imposed a limit on punitive damages, subject to exceptions for certain causes of action, of the greater of $350,000 or five times compensatory damages. See *N.J.S.A.* 2A:15-5.14.) Before us Coastal complains that the $1.25 million award was excessive as bearing no reasonable relation to the compensatory award of $40,178 in the wrongful death action.

### III

We hold that in an action under the Survivor's Act, *N.J.S.A.* 2A:15-3, a claim for punitive damages may be sustained even absent an award of compensatory damages for pain and suffering. Initially, we conclude that punitive damages are a permissible form of recovery under the Survivor's Act. We reiterate that the Act must be broadly construed in order to further its remedial purpose of abrogating the common-law prohibition on claims arising from a person's death and more closely reconciling the remedies available to those who survive their injuries and those who do not. Unlike the Wrongful Death Act, which on its face provides recompense only for the direct pecuniary losses sustained by the beneficiaries, the Survivor's Act expressly allows a plaintiff to pursue any cause of action that would have been available to decedent had she lived. Thus, we agree with the Appellate Division's conclusion that because Robbins would have had a claim for punitive damages had she survived her injuries, she should not be deprived of that claim by virtue of her death. We note that our interpretation concerning the scope of recovery in a survival action is in accord with that of a majority of states.

In the unique context of a survival action, we do not view the absence of a compensatory damage award as necessarily fatal to the assertion of plaintiff's claim for punitive damages. The re-

quirement that a plaintiff show compensatory damages in order to obtain punitive damages is based on the underlying assumption that compensatory damages measure the wrong inflicted on the plaintiff. Often, a jury's conclusion that no compensation is warranted reflects that jury's determination that no harm accrued to the plaintiff. As we observed in *Nappe*, however, that underlying assumption is not unassailable. *Nappe, supra*, 97 *N.J.* at 48, 477 *A.*2d 1224. Here, plaintiff's failure to establish compensatory damages arises not from the absence of any appreciable injury to Robbins, but from the fact that her instantaneous death precluded any damages award for pain and suffering.

We recognize that an award of at least nominal damages ordinarily is required to sustain a punitive damages award. See *O'Connor, supra*, 111 *N.J.Super.* at 29, 266 *A.*2d 605. Even where a plaintiff has suffered a harm inestimable in terms of dollars and cents, an award of nominal damages serves to confirm the jury's finding that plaintiff has suffered a harm cognizable at law. That deficiency is not significant in these circumstances, however, where the elements of causation and defendant's negligence were established in the related wrongful death action. See *Alfone, supra*, 87 *N.J.* at 110–11, 432 *A.*2d 857 (recognizing that substantive issue of liability may be litigated in the same action for wrongful death and survival actions). Thus, the only additional finding by the jury that was required to support a valid survival claim was a finding that Robbins was harmed.

In that regard, we agree with the Appellate Division's conclusion that an award of funeral expenses, recoverable under the Survivor's Act, comprises sufficient damages to sustain a survival cause of action. See *Potomac Electric, supra*, 558 *A.*2d at 792 (noting that funeral expenses could be considered "substitute damages" for pain and suffering and medical expenses decedent would have sustained had she survived her injuries). Nevertheless, like the Appellate Division, we find it unnecessary to reallocate those expenses from the wrongful death action to the survival action in order to conclude that a valid cause of action was

established. Nor is it necessary to rely on the legal fiction of a presumption of continuing life in order to support a finding of conscious pain and suffering. Such a finding is relevant only to the issue of compensatory damages and, we conclude, is not an indispensable element of a survival cause of action.

■ That a negligently-caused death constitutes a legally cognizable injury is irrefutable. *Cf. United States v. Streidel,* 329 *Md.* 533, 620 *A.*2d 905, 909 (1993) ("The death of a victim as a result of a 'personal injury' or 'injury' is ... the ultimate injury to that victim."). Thus, where the other elements of a survival claim have been established in a related action pursuant to the Wrongful Death Act, we hold that to require an award of funeral expenses, compensatory damages for pain and suffering, or even nominal damages to support a claim for punitive damages under the Survivor's Act would be superfluous. Accordingly, where all of the essential elements of a punitive damages claim are established, such a claim may be sustained without proof of pain and suffering.

■ We also conclude that the recent amendments to the Punitive Damages Act, requiring an award of compensatory damages as a predicate for a punitive damages award, are inapplicable to a survival action where the decedent was killed instantly. That provision, as previously noted, took effect after this matter was commenced and thus does not govern the disposition of this appeal. Nevertheless, we do not believe that the Legislature, in enacting that provision, intended to foreclose a remedy for a death caused by egregious conduct. Governor Whitman's statement accompanying the signing of the Punitive Damages Act explained that the legislation was intended to "strike[ ] a fair balance between preserving a person's right to sue and controlling nuisance suits that drive up the cost of doing business in New Jersey." Office of the Governor, *News Release* at 1 (June 29, 1995). Governor Whitman's statement supports our finding that the statutory requirement indicates a valid legislative attempt to curtail suits seeking redress for allegedly malicious conduct that causes no substantial injury. The mechanism chosen by the

Legislature to limit awards in suits involving insubstantial injury is consistent with the correlation in most cases between the harm suffered by a plaintiff and the amount of a compensatory damages award. We do not believe, however, that the Legislature could have intended to bar a claim for punitive damages where, as here, a party suffered the grievous and, indeed, ultimate injury of death, because of the fortuitous circumstance that the victim died instantly. See *Strasenburgh v. Straubmuller*, 146 *N.J.* 527, 541–42, 683 *A.*2d 818 ("It is a venerable principle that a law will not be interpreted to produce absurd results.") (citation and subsequent history on remand omitted); *Adams v. Cooper Hosp.*, 295 *N.J.Super.* 5, 684 *A.*2d 506 (App.Div.1996) ("Statutes must be read sensibly so as to provide interpretations consistent with their legislative purpose and to avoid unreasonable results."), *certif. denied*, 148 *N.J.* 463, 690 *A.*2d 610 (1997). That result clearly would be inconsistent with the underlying purposes of punitive damages, and would provide an unwarranted benefit to those defendants who inflict the most profound harm.

We note but reject Coastal's concern that our holding will ensure that every wrongful death action will give rise to a claim for punitive damages. Beyond proof of a negligently-caused death, the assertion of a claim for punitive damages requires a plaintiff to prove by clear and convincing evidence that defendant's conduct amounted to a "deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences." *Berg v. Reaction Motors Div.*, 37 *N.J.* 396, 414, 181 *A.*2d 487 (1962), *codified at N.J.S.A.* 2A:15–5.10. Moreover, we observe that in every wrongful death action in which the decedent survived her injuries, however briefly, punitive damages may lie provided defendant's conduct met that standard; we perceive no legitimate reason why the remedy should be different for a decedent who was killed instantly.

We reject Coastal's contentions that on this record there was inadequate factual support for the imposition of punitive damages, and that the amount of the punitive damages award was excessive,

substantially for the reasons set forth in the opinion of the Appellate Division. 313 *N.J.Super.* at 190–98, 201–03, 713 *A.*2d 20.

## IV

We affirm the judgment of the Appellate Division.

GARIBALDI, J., concurring.

I agree that plaintiff established a valid claim for punitive damages under the Survivor's Act, *N.J.S.A.* 2A:15–3 for the tragic accident that occurred in 1990. As the Court observed, effective October 27, 1995, the Legislature enacted the Punitive Damages Act (the "Act"), *N.J.S.A.* 2A:15–5.9 to –5.17. The Legislature's purpose in enacting the Act was to establish more restrictive standards with regard to the awarding of punitive damages. *See N.J.S.A.* 2A:15–5.9; Assembly Insurance Committee Statement, Senate, No. 1496–*L.* 1995, *c.* 142 (stating the restrictions imposed on the awarding of punitive damages). For example, that Act requires an award of compensatory damages as a statutory precedent for an award of punitive damages and disallows nominal damages as a basis for a punitive damages claim. *N.J.S.A.* 2A:15–5.13(b) and (c).

The Court properly recognized that the Act did not govern the disposition of this appeal, as it did not take effect until October 27, 1995. The parties, also recognizing that the Act was not applicable, did not argue or brief whether the Act would be applicable in future matters where circumstances were as egregious as those presented in this appeal. Nevertheless, the Court reached out for that issue and concluded that the Legislature did not intend to foreclose punitive damages as a remedy for death caused by egregious conduct.

I would not have reached that issue. I recognize that the Court's holding in that regard is *dicta.* Nevertheless, such an important decision should not be made unless the issue is before the Court, and is fully argued and briefed. That is particularly

true when the Court's interpretation appears to be contrary to the clear legislative mandate indicating that the purpose of the Act was to restrict punitive damages, rather than expand them.

Justice GARIBALDI concurs in result.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.