**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5190-17T4

SANDRA CIGNARELLA, and
ROBERT CIGNARELLA,

      Plaintiffs-Appellants,

v.

FITNESS INTERNATIONAL,
LLC, d/b/a LA FITNESS
INTERNATIONAL, LLC, LEVIN
PROPERTIES, and AMERICAN
POOL ENTERPRISES, INC.,

      Defendants,

and

NEW JERSEY POOL MANAGEMENT,
LLC, d/b/a AMERICAN POOL
MANAGEMENT,[1]

      Defendant-Respondent.

_____

Argued October 3, 2019 – Decided January 10, 2020

---

[1] Improperly pled as American Pool Management.

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-11747-14.

Rudolph C. Westmoreland argued the cause for appellants (Westmoreland Vesper Quattrone & Beers, attorneys; Rudolph C. Westmoreland and Anthony Carbone, on the briefs).

Mark William Catanzaro argued the cause for respondent New Jersey Pool Management LLC, d/b/a American Pool Management.

PER CURIAM

Following a five-day jury trial, plaintiff Sandra Cignarella[2] was awarded $85,000 in compensatory damages against defendant American Pool Management[3] for injuries she sustained as a result of exposure to chlorine gas while swimming at an LA Fitness indoor pool.[4] Defendant was contracted by

---

[2] Robert Cignarella's loss of consortium claim was rejected by the jury. Because he did not appeal that verdict, he was incorrectly named a party to this appeal. See Longo v. Pleasure Productions, Inc., 215 N.J. 48, 58 (2013) (recognizing a plaintiff may be awarded punitive damages only if compensatory damages were awarded during the first stage of trial). All references to "plaintiff" therefore pertain solely to Sandra Cignarella.

[3] Plaintiff voluntarily dismissed her claims against American Pool Enterprises during trial. Accordingly, that defendant is not a party to this appeal.

[4] The jury entered a verdict in favor of Fitness International, LLC d/b/a LA Fitness and, as such, LA Fitness is not a party to this appeal.

LA Fitness to maintain its indoor pools at several facilities in New Jersey, including the North Brunswick facility where plaintiff was injured. One of defendant's employees caused the gas discharge while he was working in the spa pump room. Prior to trial, the court dismissed plaintiff's demand for punitive damages on summary judgment. Plaintiff now appeals that dismissal. Because we conclude plaintiff failed to present genuinely disputed issues of fact from which a jury could reasonably infer defendant acted willfully or wantonly, we affirm.

We review the trial court's grant of summary judgment de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Employing the same standard the trial court uses, ibid., we review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most favorable to plaintiff nonetheless entitle defendant to judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

The facts are largely undisputed. Defendant employed one worker, who ordinarily provided pool maintenance services at eight LA Fitness locations, including the North Brunswick facility. The pool maintenance worker "was trained in handling the chemicals at a swimming facility and certified by

OSHA[5] to do so." Before leaving for a scheduled three-day vacation during the off-season in December 2013, the maintenance worker was informed by his supervisor that two of defendant's construction workers would "handle the LA Fitness account while he was away."

When deposed, the maintenance worker said he brought both construction workers to all eight LA Fitness locations that he maintained, "showed them the facility," and "how to test the water." Because the construction workers were "not OSHA trained to handle" the chemicals, the maintenance worker instructed the men "not to worry about" them. He said the "[c]hemicals would all be set before [he] left [for] those couple [of] days off, and if they had a problem with anything to call the office." The maintenance worker reiterated, "[t]hey were told not to touch the chemicals. There was no need to do so. If a problem arose at any of the facilities, they were to call [his supervisor] and inquire as to what should be done." In sum, the construction workers' responsibilities were limited to testing the water, cleaning the skimmer baskets and vacuuming the pool, if necessary.

Because neither party could locate the worker who spilled the chemicals, only one of the construction workers was deposed; that worker was the nephew

---

[5] Occupational Safety and Health Administration.

of the missing construction worker.  The nephew's testimony was unclear as to whether the maintenance worker had taken him to the North Brunswick facility, but the nephew acknowledged the maintenance worker had shown him other LA Fitness facilities before leaving for vacation.  Importantly, the nephew testified he was instructed to test the pool's chemicals, clean the skimmer baskets, and "report back . . . any out-of-place things."

On the date of the incident, the North Brunswick facility was the construction workers' last stop.  As instructed, they entered the pump room where the pool's chemicals were stored.  The nephew brought the chemical testing kit to the pool, tested the water, then started to clean the skimmer basket. The uncle remained behind to clean the pump room of any debris.  Because there was minimal work to be done in the pump room, the nephew grew concerned when his uncle took longer than anticipated to complete his task.  Returning to the pump room, the nephew was struck by chlorine fumes as he saw his uncle "standing with a container of chlorine in his hand . . . ."  The uncle said he had slipped while holding the bucket of chlorine and poured its contents into an acid vat, releasing the toxic fumes.  Angered, the nephew responded, "You're stupid." The resulting gas entered the pool area, injuring plaintiff.

A-5190-17T4

Following the accident, OSHA issued citations to defendant for improper labeling of two chemical vats; improperly training its employees regarding the use of protective masks; and failure to provide its employees with an eyewash station in the pump room. The Middlesex County Health Department also cited defendant for failing to safely maintain the swimming pool, N.J.A.C. 8:26-6.1. Twice in the two months prior to the incident, the health department also investigated defendant for chlorine gas incidents at the North Brunswick pool following: (1) a mechanical malfunction of the swimming pool chlorinator; and (2) an over-chlorination following a power outage.

At the conclusion of argument, the motion judge issued an oral decision, finding no factual support for plaintiff's punitive damages claim. The judge rejected plaintiff's contention that the dangerous nature of the highly-regulated chemicals was "in and of itself . . . evidence of [defendant's] willful and wanton conduct" by sending to LA Fitness construction workers, who were neither OSHA-certified nor familiar with pool chemicals.

Rather, the judge emphasized the construction workers "were given specific instructions" regarding their responsibilities at each LA Fitness pool in the maintenance worker's absence. Those responsibilities were limited to testing the water, cleaning the skimmer baskets and cleaning up loose debris on the

pump room floor. Because defendant specifically instructed the construction workers – at the very least – not to worry about the chemicals, and the gas was released following "a slip and fall in the pump room[,]" the judge concluded the record was devoid of any evidence that the "release of chemical gas was the result of senior management's willful and wanton or intentional conduct."

In what might be described as a scattershot approach to her appeal, plaintiff raises many issues challenging the motion judge's decision.[6] At oral argument, plaintiff boiled down her claims to two points, asserting the motion judge: (1) erroneously relied on the nephew's account of his uncle's hearsay statement, claiming he slipped and fell and accidentally mixed the chemicals; and (2) failed to consider whether defendant reasonably discharged to its two unqualified construction workers its non-delegable duty of care to protect plaintiff.

We have considered these contentions, and those referenced in plaintiff's briefs, in view of the record and applicable legal principles, and conclude they are without sufficient merit to warrant extended discussion in a written opinion.

---

[6] Plaintiff's merits and reply briefs violate Rule 2:6-2(a)(1) and (6) by failing to set forth "appropriate point headings . . . into as many parts as there are points to be argued." R. 2:6-2(a)(6); see also In re Parlow, 192 N.J. Super. 247, 248 (App. Div. 1983) (recognizing each issue to be argued should be presented in separate point headings).

R. 2:11-3(e)(1)(E). Following our de novo review of the record, we conclude plaintiff failed to present genuinely disputed issues of fact from which a jury could reasonably conclude defendant acted wantonly or willfully. We add the following comments.

A punitive damages award seeks to punish the wrongdoer and deter its egregious misconduct. Longo v. Pleasure Productions, Inc., 215 N.J. 48, 58-59 (2013); see also N.J.S.A. 2A:15-5.10. More specifically, what is contemplated is a "positive element of conscious wrongdoing." Berg v. Reaction Motors Div., 37 N.J. 396, 414 (1962).

The Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17, provides guidelines for determining whether punitive damages may be awarded. Relevant here:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.
>
> [N.J.S.A. 2A:15-5.12(a).]

The Act defines "wanton and willful disregard" as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. 2A:15-5.10. "Mere negligence, no matter how gross, will not suffice as a basis for punitive damages." Smith v. Whitaker, 160 N.J. 221, 242 (1999). Instead, "circumstances of aggravation and outrage, beyond the simple commission of a tort, are required . . . ." Pavlova v. Mint Mgmt. Corp., 375 N.J. Super. 397, 404-05 (App. Div. 2005). "The standard can be established if the defendant knew or had reason to know of circumstances which would bring home to the ordinary reasonable person the highly dangerous character of [its] conduct." Dong v. Alape, 361 N.J. Super. 106, 116-17 (App. Div. 2003).

In the present matter, the evidence viewed in a light most favorable to plaintiff does not support "the likelihood of serious and imminent harm, much less of defendant's awareness of that likelihood." Pavlova, 375 N.J. Super. at 408. Defendant undertook steps to ensure at least some of the maintenance worker's responsibilities would be covered during his three-day vacation by restricting the tasks of its untrained construction workers to testing the pool's chemicals, cleaning the skimming baskets, and cleaning debris from the floor. Although there is some disagreement regarding the scope of training provided

to the construction workers, it is undisputed that the maintenance worker provided some training.

At the very least, the maintenance worker brought the construction workers to several LA Fitness facilities before he left for vacation and demonstrated how to test the pool water. Importantly, the construction workers were specifically informed not to handle the chemicals while performing their delineated tasks at the LA Fitness facilities. Indeed, the workers were instructed to refrain from handling the chemicals precisely because they were not OSHA-certified.

Nor are we persuaded that defendant's OSHA and health code violations evinced defendant's willful or wanton conduct. Because the uncle disregarded defendant's instructions to refrain from handling the chemicals, the incident could have occurred regardless of the reasons defendant was cited for this incident or prior incidents. See Pavlova, 375 N.J. Super. at 408 (finding two prior fires in the same building which did not originate in the same manner as the fire at issue were not probative of the defendant landlord's knowledge).

In sum, defendant reasonably relied on its expectations that the construction workers would comply with its mandates. Notably, plaintiff submitted no evidence – let alone clear and convincing evidence – to refute

defendant's instructions to the workers or that the workers would not likely follow those instructions. See N.J.S.A. 2A:15-5.10 (defining "clear and convincing evidence" as "that standard of evidence which leaves no serious or substantial doubt about the correctness of the conclusions drawn from the evidence"). We conclude plaintiff established nothing arising to wanton, reckless or malicious acts or omissions on the part of defendant that would warrant submission of its punitive damages claim to the jury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5190-17T4